1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LESLIE M. COOKE, | ) | 1:07-cv-00076-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| v. | ) | COMPLAINT (DOC. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | ORDER DIRECTING THE ENTRY OF |
| Commissioner of Social | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| Security, | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| | ) | SECURITY, AND AGAINST PLAINTIFF |
| Defendant. | ) | LESLIE M. COOKE |
| | ) | |
| | ) | |

Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs,

---

[1] The Honorable Lawrence J. O'Neill ordered the case assigned to the undersigned Magistrate Judge for all purposes on May 1, 2007.

1  which have been submitted without oral argument to the Honorable

2  Sandra M. Snyder, United States Magistrate Judge.

3      I. <u>Procedural History</u>

4      On February 4, 2004, Plaintiff applied for DIB and SSI,

5  alleging disability since January 1, 1999. (A.R. 58-60.)

6  Plaintiff alleged that she had low back and neck pain and

7  coronary artery disease after heart attacks. (A.R. 37.) After

8  Plaintiff's claim was denied initially and on reconsideration,

9  Plaintiff requested, and appeared at, a hearing before the

10 Honorable James E. Ross, Administrative Law Judge (ALJ) of the

11 Social Security Administration (SSA), on June 20, 2006. (A.R. 28-

12 31, 256-84.) Plaintiff appeared with an attorney and testified.

13 On July 27, 2006, the ALJ denied Plaintiff's application for

14 benefits. (<u>Id.</u> at 12-18.) After the Appeals Council denied

15 Plaintiff's request for review on November 27, 2006, Plaintiff

16 filed the complaint in this action on January 10, 2007. (<u>Id.</u> at

17 5-8.) Briefing commenced on September 18, 2007, and was completed

18 with the filing on September 18, 2007, of Plaintiff's reply to

19 Defendant's opposition.

20     II. <u>Standard and Scope of Review</u>

21     Congress has provided a limited scope of judicial review of

22 the Commissioner's decision to deny benefits under the Act. In

23 reviewing findings of fact with respect to such determinations,

24 the Court must determine whether the decision of the Commissioner

25 is supported by substantial evidence. 42 U.S.C. § 405(g).

26 Substantial evidence means "more than a mere scintilla,"

27 <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a

28 preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10

1 (9th Cir. 1975). It is "such relevant evidence as a reasonable

2 mind might accept as adequate to support a conclusion."

3 Richardson, 402 U.S. at 401. The Court must consider the record

4 as a whole, weighing both the evidence that supports and the

5 evidence that detracts from the Commissioner's conclusion; it may

6 not simply isolate a portion of evidence that supports the

7 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

8 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It

9 is immaterial that the evidence would support a finding contrary

10 to that reached by the Commissioner; the determination of the

11 Commissioner as to a factual matter will stand if supported by

12 substantial evidence because it is the Commissioner's job, and

13 not the Court's, to resolve conflicts in the evidence. Sorenson

14 v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

15     In weighing the evidence and making findings, the

16 Commissioner must apply the proper legal standards. Burkhart v.

17 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

18 review the whole record and uphold the Commissioner's

19 determination that the claimant is not disabled if the

20 Commissioner applied the proper legal standards, and if the

21 Commissioner's findings are supported by substantial evidence.

22 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

23 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

24 the Court concludes that the ALJ did not use the proper legal

25 standard, the matter will be remanded to permit application of

26 the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

27 Cir. 1987).

28 //////

1    III. <u>Disability</u>

2        In order to qualify for benefits, a claimant must establish

3    that she is unable to engage in substantial gainful activity due

4    to a medically determinable physical or mental impairment which

5    has lasted or can be expected to last for a continuous period of

6    not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).

7    A claimant must demonstrate a physical or mental impairment of

8    such severity that the claimant is not only unable to do the

9    claimant's previous work, but cannot, considering age, education,

10   and work experience, engage in any other kind of substantial

11   gainful work which exists in the national economy. 42 U.S.C.

12   1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th

13   Cir. 1989). The burden of establishing a disability is initially

14   on the claimant, who must prove that the claimant is unable to

15   return to his or her former type of work; the burden then shifts

16   to the Commissioner to identify other jobs that the claimant is

17   capable of performing considering the claimant's residual

18   functional capacity, as well as her age, education and last

19   fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d

20   1273, 1275 (9th Cir. 1990).

21       The regulations provide that the ALJ must make specific

22   sequential determinations in the process of evaluating a

23   disability: 1) whether the applicant engaged in substantial

24   gainful activity since the alleged date of the onset of the

25   impairment, 20 C.F.R. § 404.1520 (2006);[2] 2) whether solely on the

26   basis of the medical evidence the claimed impairment is severe,

27

28       [2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. See 20 C.F.R. § 416.920.

Here, the ALJ found that Plaintiff was insured for disability through December 31, 2003. Plaintiff had a severe impairment of coronary artery disease, status post November 2003 myocardial infarction with stent placement; her impairment of neck and back pain radiating into her legs did not significantly affect Plaintiff's ability to perform basic work activities and thus was not severe. Plaintiff had no impairment or combination thereof that met or medically equaled a listed impairment; Plaintiff retained the residual functional capacity (RFC) to perform light work; she could lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour work day. Thus, she could perform her past relevant work as

1 a secretary, and was not disabled. (A.R. 14-17.)

2   IV. <u>Failure to Find that Back and Neck Pain Were Severe</u>

3   Plaintiff argues that the ALJ's finding that Plaintiff's
4 back and neck pain were severe was not made according to the
5 applicable legal standards and was not supported by substantial
6 evidence.

7   The ALJ noted the correct, governing legal standard in the
8 decision. (A.R. 13.) As the ALJ stated, at step two, the
9 Secretary considers if claimant has "an impairment or combination
10 of impairments which significantly limits his physical or mental
11 ability to do basic work activities." 20 C.F.R. §§ 404.1520(c),
12 416.920(c). This is referred to as the "severity" requirement and
13 does not involve consideration of the claimant's age, education,
14 or work experience. <u>Id.</u> The step-two inquiry is a de minimis
15 screening device to dispose of groundless claims. <u>Bowen v.</u>
16 <u>Yuckert</u>, 482 U.S. 153-54 (1987). The Secretary is required to
17 "consider the combined effect of all of the individual's
18 impairments without regard to whether any such impairment, if
19 considered separately, would be of [sufficient medical]
20 severity." 42 U.S.C. § 1382c(a)(3)(F).

21   Basic work activities include the abilities and aptitudes
22 necessary to do most jobs, such as physical functions of walking,
23 standing, sitting, lifting, pushing, pulling, reaching, carrying,
24 or handling; capacities for seeing, hearing, and speaking;
25 understanding, carrying out, and remembering simple instructions;
26 use of judgment; responding appropriately to supervision, co-
27 workers and usual work situations; and dealing with changes in a
28 routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

An impairment or combination thereof is not severe when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); Soc. Sec. Ruling 85-28; Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

The ALJ concluded that despite her subjective complaints to the contrary, Plaintiff's dizziness and neck and back pain radiating into her legs were not severe because of their lack of significant effect on Plaintiff's abilities to perform basic work activities. (A.R. 15-17.) The ALJ stated:

> The claimant further alleges neck pain and back pain radiating into her legs. After she complained of neck, back and leg pain in November 2004 (Exhibit 10F, pages 15, 20), x-rays of her lumbar and cervical spine were obtained. These showed hypertrophic and degenerative changes in the lower lumbar facet joints and degenerative narrowing of the C5-6 intervertebral disk space with early bony hypertrophic changes present from C4 through C7 (Exhibit 10F, page 14). However, the treating physician, Dr. Afshin Nahavandi, characterized the degenerative changes as mild and only made a referral for physical therapy (Exhibit 10F, page 13). MRI of the cervical spine in June 2005 revealed only minimal if any spinal canal narrowing and only mild left neural foraminal narrowing (Exhibit 10F, pages 6-7). The undersigned finds that these impairments do not significantly affect the claimant's abilities to perform basic work activities.

(A.R. 15.)

Substantial evidence supported the ALJ's finding.

Plaintiff complained of neck pain in 2000 to Dr. Molina, who found tenderness and degenerative joint disease. (A.R. 155.)

1  Plaintiff complained of neck and back pain to her treating
2  physician, Dr. Le, in March and November 2004; in March 2004, he
3  described it as neck pain and low back pain due to disk disease;
4  clinical findings were some tenderness of palpation on the lumbar
5  area; he prescribed Bextra, a continuation of exercise, and
6  follow-up in two months. Plaintiff continued to seek treatment
7  for her neck and back pain in February 2006 from Dr. Rice. (A.R.
8  221, 227, 232.)

9       However, the objective medical evidence was as the ALJ
10 characterized it. X-rays of the lumbar and cervical spine in
11 November 2004 revealed hypertrophic and degenerative changes in
12 the lower lumbar facet joints, but alignment was satisfactory; in
13 the cervical spine, there was degenerative narrowing of the C5-6
14 intervertebral disk space with early bony hypertrophic changes
15 present from C4 through C7. (A.R. 220.) In December 2004,
16 Plaintiff's treating physician, Afshin G. Nahavandi, reviewed the
17 results and opined that the findings were mild degenerative
18 narrowing of C5-C6 intervertebral disk; he referred Plaintiff to
19 physical therapy. (A.R. 218-19.) An MRI of the cervical spine
20 from June 2005 revealed intervertebral disk degenerative changes
21 at C4/5, C5/6 and C6/7, with "minimal if any spinal canal
22 narrowing," and uncovertebral facet degeneration at several
23 levels in the mid spine on the left, causing mild left neural
24 foraminal narrowing. There was no appreciable spinal canal
25 stenosis. (A.R. 213, 212-13.)

26      Although Plaintiff claims that this revealed "marked" left
27 neural foraminal narrowing (Brief at p. 7), the report reflects
28 that at C2/3, there was widely patent spinal canal and neural

1  foramina; at C3/4, patent neural foramina; at C4/5 there were

2  patent spinal canal and neural foramina, with a left

3  uncovertebral facet osseous hypertroph that "may slightly narrow

4  the left neural foramen"; at C5/6, a broad left paracentral disk

5  bulge effaced the thecal sac without appreciable spinal canal

6  stenosis, and bilateral uncovertebral facet osseous hypertrophy

7  caused "minimal left neural foraminal narrowing"; at C6/7, there

8  was a broad left paracentral disk bulge that effaced the thecal

9  sac with notations of "mildly narrowing the spinal canal," and

10 "Neural foramina are patent"; and at C7/T1, the spinal canal and

11 neural foramina were patent. (A.R. 212-13.) Plaintiff's treating

12 source, Dr. Myain Malay, noted in a followup note that there was

13 no stenosis except narrowing at C4-5. (A.R. 211.)

14     An x-ray of the lumbar spine taken September 14, 2006,

15 revealed hypertrophic and degenerative changes in the facet

16 joints at L5-S1 and a probable old pars interarticularis fracture

17 with associated sclerosis and with some unspecified acute

18 abnormalities seen but intervertebral disc space height otherwise

19 preserved. (A.R. 245.)

20     Although the record shows a back condition or impairment, it

21 is Plaintiff's burden to introduce evidence that her impairment

22 had a significant effect on Plaintiff's ability to perform basic

23 work activities.

24     Here, the ALJ noted Plaintiff's subjective complaints of

25 constant dizziness, especially if she rode or drove in a car;

26 excruciating back and neck pain with a neck that stiffened up,

27 headaches if Plaintiff did not keep moving her neck, and back

28 pain that caused leg cramps at least weekly, for which she took

APAP with Codeine; sharp chest pain at least weekly brought on by exertion or getting up too fast or moving too quickly, for which Plaintiff had to take nitroglycerin, which caused headaches; shortness of breath all the time due to heart damage; and fatigue due to difficulty breathing, pain, and lack of sleep, which required medication (Ambien) but which even with the medication nevertheless resulted in interrupted sleep because of Plaintiff's need to move her neck for relief. (A.R. 16-17.) The ALJ also noted Plaintiff's claims concerning her own functional limitations, including being able to lift and carry nothing more than a cat weighing fourteen pounds for ten feet; sit or an hour or two if she supported her head on her hands; stand about fifteen minutes; requiring rest breaks of ten to thirty minutes each because of back pain; and being unable to sit long enough to type or work as a secretary because of her fatigue and constant dizziness. (A.R. 16-17.)

The ALJ expressly found that Plaintiff's subjective complaints did not provide a reliable basis for any further limitations on Plaintiff's RFC, and he expressly noted that her testimony that she could not perform sedentary secretarial work was particularly unconvincing in view of her prior statements concerning a fairly wide range of light daily activities. (A.R. 17.) He rejected Plaintiff's subjective complaints because objective medical evidence, Plaintiff's activities of daily living (cooking, painting, caring for pets, laundry, household chores, vacuuming when she had to, visiting, walking several hundred yards before needing to rest, light gardening), and inconsistencies in Plaintiff's claims. (A.R. 16-17.)

1    Plaintiff does not challenge the ALJ's findings with respect
2  to Plaintiff's subjective claims. Plaintiff's subjective claims
3  do not provide the needed evidence that Plaintiff's neck and back
4  pain had significant functional limitations.

5    Plaintiff points to limitations assessed by her treating
6  physician, Dr. Le. For the sake of avoiding repetitive analysis,
7  the Court will separately and more fully discuss the opinions of
8  Drs. Le and Myaing in connection with Plaintiff's more specific
9  argument that the ALJ's weighing of their opinions was erroneous.

10    However, with respect to the issue of the severity of
11 Plaintiff's neck and back pain, the evidence was in conflict. The
12 ALJ rejected the opinions of Plaintiff's treating physicians,
13 Drs. Le and Myaing, that Plaintiff's impairments rendered her
14 more severely restricted or disabled, and instead relied on the
15 opinions of the state agency physicians and other medical
16 sources. The ALJ expressly noted that Dr. Nahavandi, Plaintiff's
17 treating physician, characterized the degenerative changes of
18 Plaintiff's spine as mild, and he prescribed only physical
19 therapy. (A.R. 15.) As the analysis set forth below reflects, the
20 ALJ's consideration of and determination regarding the evidence
21 that Plaintiff suffered restrictions that precluded light work
22 was made according to correct legal standards and was supported
23 by substantial evidence.

24    If it were to be found that the ALJ erred in not considering
25 Plaintiff's neck and back pain severe at step two, the ALJ's
26 error would have been harmless. In formulating Plaintiff's RFC,
27 the ALJ considered, evaluated, and explained his reasoning
28 concerning the evidence relating to Plaintiff's neck and back

pain. (A.R. 15-16.) It is established that an ALJ's failure to find an impairment severe, even if erroneous, is harmless error where at the later RFC stage of the analysis, the ALJ discussed the impairment, the medical findings, the pertinent symptoms, and the applicable opinions concerning functional limitations. <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007).

V. <u>Opinions of Plaintiff Treating Physicians</u>

Plaintiff argues that the ALJ erred in failing to adopt the opinions of Plaintiff's treating physicians.

The standards for evaluating treating source's opinions are as follows:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." <u>Id.</u> § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. <u>Id.</u> § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. <u>Id.</u> § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the

12

opinion; and "[o]ther factors" such as the degree
of understanding a physician has of the
Administration's "disability programs and their
evidentiary requirements" and the degree of his or
her familiarity with other information in the case
record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

With respect to proceedings under Title XVI, the Court notes
that an identical regulation has been promulgated. See, 20 C.F.R.
§ 416.927.

As to the legal sufficiency of the ALJ's reasoning, the
governing principles have been recently restated:

The opinions of treating doctors should be given more
weight than the opinions of doctors who do not treat
the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th
Cir.1995) (as amended).] Where the treating doctor's
opinion is not contradicted by another doctor, it may
be rejected only for "clear and convincing" reasons
supported by substantial evidence in the record. Id.
(internal quotation marks omitted). Even if the
treating doctor's opinion is contradicted by another
doctor, the ALJ may not reject this opinion without
providing "specific and legitimate reasons" supported
by substantial evidence in the record. Id. at 830,
quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
Cir.1983). This can be done by setting out a detailed
and thorough summary of the facts and conflicting
clinical evidence, stating his interpretation thereof,
and making findings. Magallanes [v. Bowen, 881 F.2d
747, 751 (9th Cir.1989).] The ALJ must do more than
offer his conclusions. He must set forth his own
interpretations and explain why they, rather than the
doctors', are correct. Embrey v. Bowen, 849 F.2d 418,
421-22 (9th Cir.1988).
Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at
830-31.

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

Here, the ALJ noted Plaintiff's medical history, including
her hospitalization in November 2003 following an acute inferior
wall myocardial infarction; the successful treatment of her
coronary artery disease with stent placement and without a

13

1  pacemaker; and Plaintiff's being discharged in December 2003
2  after her condition had resolved, with medications, directions
3  for dietary management of her weight and cholesterol, and advice
4  gradually to increase her walking, which was to be up to two
5  miles a day within four weeks. (A.R. 14, 132-38, 123-24.)

6      The medical evidence reflects that on December 17, 2003, Dr.
7  Vinod K. Gupta, a specialist in cardiovascular diseases,
8  prescribed a stress test for Plaintiff to check for any ischemia;
9  she was advised gradually to start walking, and she was to be
10 continued on disability for three months. (A.R. 152.)

11     In March 2004, Plaintiff was examined by her treating
12 physician, Dr. Luan Le, at the Visalia Health Care Center. He
13 noted that Plaintiff stated that she had been doing well after
14 her surgery, but she had TCMS. (A.R. 197-98.) Dr. Le ordered a
15 stress test. (A.R. 198.) Plaintiff exhibited some tenderness to
16 palpation on the lumbar area in March 2004, but she had full
17 range of motion of the neck, which was supple. (A.R. 227.)

18     On August 12, 2004, Dr. Mohinder S. Poonia, F.A.C.C., board-
19 certified in cardiology and vascular diseases, performed a
20 consultative examination of Plaintiff in the course of a
21 qualified disability evaluation. Plaintiff complained of chest
22 pain on mild to moderate exertion which was relieved with
23 nitroglycerin and rest. His impression was chest pain, angina
24 pectoris; three-vessel coronary artery disease, status post
25 coronary artery stent, status post inferior wall myocardial
26 infarction, and hypertension. He opined that an EKG stress test
27 would be of further help in evaluating the extent of physical
28 exertion which produced the chest pain. (A.R. 164-66.)

1   Dr. Don H. Gaede, M.D., performed a cardiac stress test on
2   Plaintiff on October 14, 2004; it revealed that the resting
3   supine ECG was normal; Plaintiff was exercised through two stages
4   of the Bruce protocol; she experienced no chest discomfort but
5   was completely exhausted by the end of the treadmill. The
6   conclusion was fair exercise tolerance, no significant ischemic
7   ST changes, good blood pressure and pulse response to exercise,
8   and no arrhythmias with exercise. (A.R. 167-79.)

9   State agency medical consultant Sadda Reddy, M.D., opined on
10  October 29, 2004, that with her coronary artery disease,
11  hypertension, and fibromyalgia, Plaintiff had the RFC to perform
12  light work and sit, stand, and walk about six hours in an eight-
13  hour work day based on the longitudinal record, essentially
14  normal findings and her successful treatment, her activities of
15  daily living (light housekeeping, light gardening, walking daily,
16  and caring for cats and dogs), and the stress test. (A.R. 181-
17  91.) The physician reasoned that Dr. Le's assessment was based on
18  an exam of March 2004 and was not consistent with the then-
19  current activities of daily living and the treadmill performance;
20  claimant had improved since then, and Dr. Le had not seen her in
21  seven months. (A.R. 187, 191.)

22  In November and December 2004, Plaintiff visited her
23  treating physician for followup concerning her neck and back
24  pain; x-rays had shown degenerative narrowing of the C5-6
25  intervertebral disk space with early bony hypertrophic changes,
26  and the plan was to refer Plaintiff to physical therapy. (A.R.
27  218-20.)

28  Dr. Reddy's assessment was reviewed and affirmed by state

15

agency medical consultant Dr. James B. Peery, M.D., on March 10, 2005. (A.R. 188.)

Plaintiff visited Dr. Malay Myaing on April 6, 2005, for a prescription refill; she complained of dizziness but there was no focal deficit; Dr. Myaing stated that he would check cerebral circulation with an MRI. (A.R. 217.)

An MRI of the brain taken on April 15, 2005, for Dr. Myaing revealed multiple small focal areas of increased signal intensity (long TR images) involving the periventricular white matter bilaterally. These findings were suspicious for small vessel ischemic disease; some of the lesion lay at the gray-white junction. The MRI head scan was otherwise normal. (A.R. 216.)

In June 2005 Plaintiff continued to complain of dizziness. (A.R. 214.)

On June 8, 2005, Dr. Myaing wrote on a prescription form that Plaintiff was permanently disabled with chest pain. (A.R. 206.)

On August 30, 2005, a carotid ultrasound, consisting of a duplex examination of the carotid arteries, was performed. It revealed no evidence of surgically significant stenoses within the carotid system bilaterally using ultrasound velocity criteria. On the right, a forty to fifty-nine per cent narrowing was suspected. Bilateral plaquing was demonstrated near the bifurcations. (A.R. 209-10.)

Records from January through April 2006 pertaining to Plaintiff's care by Dr. Rice at the Family Healthcare Network reveal that on January 12, 2006, Dr. Rice examined Plaintiff and found that cardiovascularly, Plaintiff had a regular rate and

rhythm; her lungs were clear. (A.R. 234.) Plaintiff continued to
complain of neck and back pain in February 2006, and a MRI
brought in by Plaintiff revealed some intervertebral disk
degenerative changes and some left neural foraminal narrowing at
the C6-7 level. Plaintiff reported that after her cardiac
ultrasound, she went to a vascular surgeon, who felt that there
was nothing that needed to be done. Plaintiff's lungs were clear,
and her heart showed no murmurs or gallops. Dr. Rice prescribed
Tylenol with Codeine for her pain. (A.R. 232.) Plaintiff needed
to lower her cholesterol but did not want to take statin drugs
because they increased her pain, so she was given directions to
take supplements for two months. (A.R. 231.) Dr. Rice reported in
April 2006 that "Apparently, she does have about 40-60% block in
the right carotid," but it was not felt to be a surgical lesion.
(AR. 229.) Dr. Rice noted that Plaintiff had been intermittent
with her supplements; she needed to lose weight and stop smoking.
(A.R. 229.)

A. Dr. Le

The ALJ noted the opinion of treating Dr. Le from July 2004,
on a fill-in-the-blanks type of form, in which he stated that
although Plaintiff could lift and carry twenty pounds
occasionally and ten pounds frequently, Plaintiff could
stand/walk with normal breaks less than two hours in an eight-
hour day, and could sit with normal breaks less than six hours of
an eight-hour work day. (A.R. 195-96.) He did not specify how
long Plaintiff could sit. It appears that he marked that
Plaintiff could only occasionally (up to one-third of the day)
climb, balance, stoop, kneel, crouch, crawl, or reach. (A.R.

17

196.) He stated that Plaintiff's impairments caused environmental restrictions involving heights, moving machinery, and temperature extremes; Plaintiff's prognosis was fair. No medical findings were cited in support of this assessment. (A.R. 195-96.)

The ALJ evaluated the medical evidence of record. He relied on the opinions of state agency medical consultants, Drs. Sadda Reddy and James Peery; he stated that he had considered the opinions of Drs. Le and Myaing, but he gave them less weight. (A.R. 15.)

The ALJ gave several reasons for giving less weight to Dr. Le's opinion. First, the ALJ noted that when given the opportunity to state the objective medical basis for his limitations, Dr. Le failed to provide any; he also noted that Dr. Le's limitations were more restrictive than those of the state agency physicians. (A.R. 16.) It is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). A conclusional opinion that is unsubstantiated by relevant medical documentation may be rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). Substantial evidence supported the ALJ's conclusion that Dr. Le failed to state the findings or objective basis for his functional limitations. This reason was specific and legitimate in the context of this case.

Further, as previously noted, to the extent that a doctor's

opinion is inconsistent with the other substantial medical evidence in the record, it is appropriately given less weight. As the preceding summary of the medical evidence reveals, the great weight of the medical evidence was consistent with the less restrictive assessments of the state agency consultants.

The ALJ further stated that Dr. Le had only seen Plaintiff on one occasion since her hospitalization when he completed the form. (A.R. 16.) The ALJ appropriately relied on the paucity of visits reflected in the record, which in turn related to the nature and extent of the treatment relationship as well as the completeness and importance of the information considered by the expert rendering the opinion. See, Orn v. Astrue, 495 F.3d 625, 633-35 (9th Cir. 2007).

Further, as the ALJ noted, Dr. Le's office record of March 11, 2004, indicated that Plaintiff had been doing well and denied any chest pain. (A.R. 16, 197.)

The ALJ also noted that as Dr. Le had advised, Plaintiff underwent a treadmill stress test on October 14, 2004, which reflected fair exercise tolerance, no significant ischemic changes, good blood pressure and pulse response to exercise, and no arrhythmias. (A.R. 16, 167.) Again, the ALJ reasonably relied on the more recent and pertinent stress test, which Dr. Le did not consider in rendering his opinion, and the results, which did not bear out the severe restrictions.

In summary, the ALJ stated specific and legitimate reasons, supported by substantial evidence in the record, for discounting the opinion of Dr. Le.

//////

B. Dr. Myaing

The ALJ noted that on June 8, 2005, Dr. Myaing wrote on a prescription form that Plaintiff was permanently disabled with frequent chest pain. (A.R. 16, 206.) The ALJ stated:

> On June 8, 2005, Dr. Myaing wrote on a prescription form, "Patient is permanently disabled with frequent chest pain." (Exhibit 9F) However, the treatment records indicate that Dr. Myaing had only seen the claimant twice (on April 6, 2005, and June 8, 2005) when he expressed that opinion and those office records do not appear to mention any complaints of chest pain (Exhibit 10F, pages 8, 11). Dr. Myaing also saw the claimant subsequently on August 2, 2005, but the office records only refer to a history of coronary artery disease which Dr. Myaing described as stable (Exhibit 10F, page 5.) Apart from the inconsistency between Dr. Myaing's statement and the underlying treatment records, the opinion of whether an individual is disabled is reserved to the Commissioner as it is not purely a medical issue.

(A.R. 16.)

The medical record reflects only two visits of Plaintiff to Dr. Myaing, April 6 and June 8, 2005, at the time of the opinion rendered on June 8. (A.R. 217, 214.) Chest pain is not mentioned in either record; the only complaint noted is dizziness. During Plaintiff's later visit to Dr. Myaing on August 2, 2005, there is no indication of any chest pain; although some of the notes are illegible, the record contains Dr. Myaing's reference to a history of coronary artery disease (H/O CAD) as stable. (A.R. 211.) Thus, substantial evidence supported the ALJ's conclusions. Again, as previously noted, the absence of findings to support an opinion, or the inconsistency of findings with an opinion, are legitimate reasons for an ALJ to rely upon in weighing a medical source's opinion.

Further, it is established that a determination of whether

or not a claimant meets the statutory definition of disability is a legal conclusion reserved to the Commissioner; the opinion of a medical source on the ultimate issue of disability is not conclusive. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Accordingly, the Court concludes that the ALJ stated specific and legitimate reasons, supported by substantial evidence in the record, for the weight placed on the opinions of Drs. Le and Myaing concerning Plaintiff's limitations from her impairments.

VI. Disposition

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Leslie M. Cooke.

IT IS SO ORDERED.

**Dated:    February 25, 2008         /s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE